# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CUSTOMIZED DISTRIBUTION SERVICES, INC., and STEVEN NEWBERN, <br><br> Defendants. | Case No. 3:24-cv-01541 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, HARTFORD CASUALTY INSURANCE COMPANY ("Hartford"), by and through its attorneys, Michael J. Duffy and Michael J. O'Malley of Wilson Elser Moskowitz Edelman & Dicker LLP, for its Complaint for Declaratory Judgment against CUSTOMIZED DISTRIBUTION SERVICES, INC. ("CDS") and STEVEN NEWBERN ("Newbern" or "Underlying Plaintiff") states as follows:

## STATEMENT OF THE CASE

1. This action seeks a declaration, pursuant to 28 U.S.C. §2201, that Hartford owes no insurance coverage obligations to CDS for the claims raised in a putative class action lawsuit originally styled: *Steven Newbern, on behalf of a class, v. Customized Distribution Services, Inc.*, Case No. 2023LA001485, filed in Madison County, Illinois and later removed, amended and styled *Steven Newbern, on behalf of a class, v. Customized Distribution Services, Inc.*, Case No. 3:23-cv-03871-RJD, pending in the Southern District of Illinois (the "Underlying Action"). A copy of the Original Underlying Complaint is attached hereto as "**Exhibit A**" and a copy of the First Amended Underlying Complaint is attached hereto as **"Exhibit B."**

297655058v.1

## PARTIES

2. Hartford is an insurance company incorporated under the laws of the State of Indiana with its principal place of business at 201 North Illinois Street, 16th Floor, Indianapolis, Indiana.

3. CDS is a corporation incorporated under the laws of Pennsylvania with its principal place of business at 20 Harry Shupe Blvd., Wharton, New Jersey.

4. Newbern is an individual and a citizen of Illinois. Newbern is named herein only as a nominal defendant because he is the plaintiff in the Underlying Action. No relief is sought against Newbern.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and each plaintiff.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because CDS conducts business within the geographical boundaries of this District and this coverage dispute concerns insurance coverage for the claims in the Underlying Action, which is pending within the geographical boundaries of this District.

## FACTS

**A.** *THE UNDERLYING ACTION*

7. On October 26, 2023, Newbern commenced the Underlying Action alleging violations of the Illinois Genetic Information Privacy Act 410 ILCS 513/1, et seq. (GIPA).

8. Newbern alleged CDS required potential employees to undergo a physical exam during which genetic information in the form of family medical history was requested.

9. Newbern alleged that by requiring prospective employees to disclose their family medical histories, CDS violated GIPA and sought statutory damages of $15,000 for each reckless or intentional violation and, alternatively, $2,500 for each negligent violation of GIPA.

10. On December 7, 2023, the Underlying Action was removed to federal court.

11. On January 31, 2024, the complaint was amended to eliminate the claims under GIPA and replace them with claims under the Illinois Biometric Information Privacy Act, codified as 740 ILCS/14 and Public Act 095-994 ("BIPA").

12. The Amended Complaint alleges CDS is a national provider of third-party logistics and warehousing services and that Underlying Plaintiff worked for CDS from July 2017 to July 2019.

13. CDS allegedly utilized a biometric timekeeping system that used biometric information such as handprints or fingerprints for timekeeping purposes.

14. CDS allegedly transmitted the biometric information to third-party vendors such as ADP.

15. The Amended Complaint defines the putative class as: "All individuals whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of Defendant within the state of Illinois at any time within the applicable limitations period without such individuals' prior written consent." *See* Ex. B.

16. The Underlying Complaint alleges one Count on behalf of Underlying Plaintiff and the putative class based on the following alleged violations:

- Violation of 740 ILCS 14/15(b)(1) based on CDS' alleged failure to inform Underlying Plaintiff and the putative class members in writing that their biometrics were being collected and stored, prior to such collection or storage;

- Violation of 740 ILCS 14/15(b)(2) based on CDS' alleged failure to inform Underlying Plaintiff and the putative class members in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used;

- Violation of 740 ILCS 14/15(b)(2) based on CDS' alleged failure to inform Underlying Plaintiff and the putative class members in writing of the specific length of time their biometrics were being captured, collected, stored, and used;

- Violation of 740 ILCS 14/15(b)(3) based on CDS' alleged failure to obtain a written release;

- Violation of 740 ILCS 14/15(a) based on CDS' alleged failure to make publicly available written retention schedule detailing the length of time for which the biometrics are stored and/or guidelines for permanently destroying the biometric information obtained;

- Violation of 740 ILCS 14/15(d)(1) based on CDS' alleged failure to to obtain informed consent to disclose or disseminate Underlying Plaintiff's and the putative class members' biometrics to third parties.

B. *THE POLICIES*

17. Below is a chart reflecting the business liability policies (the "Business Liability Policies") and the umbrella policies (the "Umbrella Policies") issued by Hartford to CDS (collectively, the "Policies"). The Policies are attached as exhibits in accordance with the chart below.

297655058v.1

| BUSINESS LIABILITY POLICIES | | | |
|---|---|---|---|
| Attached as Exhibit | Effective Dates | Policy No. | Limit |
| C | 05/01/2018 to 05/01/2019 | 13UUNZK2813 | $1 million personal and advertising limit; $2 million aggregate. |
| D | 05/01/2019 to 05/01/2020 | 10UUNHN5523 | $1 million personal and advertising limit; $2 million aggregate. |
| UMBRELLA POLICIES | | | |
| E. | 05/01/2018 to 05/01/2019 | 13RHUZK2605 | $20 million occurrence and aggregate; |
| F. | 05/01/2019 to 05/01/2020 | 10RHUHN6591 | $20 million occurrence and aggregate; |

18. Hartford also issued certain policies to CDS bearing policy numbers 10UUMDF2266, 10UUMDH6887, 10UUMDL8871, and 10UUMDQ8464, effective annually from May 1, 2020 through May 1, 2024 (collectively, the "Inland Marine Policies"). Subject to their terms, the Inland Marine Policies provide certain Inland Marine Coverage. Because they do not provide coverage for personal and advertising injury, they are not even arguably triggered.

C. *BUSINESS LIABILITY POLICIES*

19. Subject to their terms, the Business Liability Policies provide certain general commercial liability coverage and state, in part:

*COVERAGE B PERSONAL AND ADVERTISING INJURY*

    *1.    Insuring Agreement*

        *a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty*

> *to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.*
>
> *\* \* \**
>
> **b.** *This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.*

*See* Exs. C-D.

20. The Business Liability Policies also contain the following exclusions:

> **2.** **EXCLUSIONS**
>
> *This insurance does not apply to:*
>
> **a.** **Knowing Violation Of Rights Of Another**
>
> *"Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".*
>
> *\* \* \**
>
> **c.** **Material Published Prior to Policy Period**
>
> *"Personal and advertising injury" arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the policy period.*
>
> *\* \* \**
>
> **q.** **Right of Privacy Created By Statute**
>
> *"Personal and advertising injury" arising out the violation of a person's right of privacy created by any state or federal act.*
>
> *However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act.*

6

\* \* \*

  *t.*  ***Recording And Distribution Of Material Or Information In Violation Of Law***

> *"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:*
>
> *(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;*
>
> *(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;*
>
> *(3) The Fair Credit Reporting Act (FRCA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or*
>
> *(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.*

\* \* \*

  *w.*  ***Access Or Disclosure Of Confidential Or Personal Information***

> *"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.*
>
> *This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost, or expense incurred by you or others*

*arising out of any access to or disclosure of any person's or organization's confidential or personal information.*

\* \* \*

See Exs. C-D.

21. The Business Liability Policies also contain the following definitions:

**SECTION V- DEFINITIONS**

\* \* \*

17. ***"Personal and advertising injury"*** *means injury, including consequential "bodily injury", arising out of one or more of the following offenses:*

   a. *False arrest, detention or imprisonment;*

   b. *Malicious prosecution;*

   c. *The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person or organization occupies, committed by or on behalf of its owner, landlord or lessor;*

   d. *Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

   e. *Oral, written or electronic publication of material that violates a person's right of privacy;*

   f. *Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";*

   g. *Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your website";*

   h. *Discrimination that results in humiliation or other injury to the feelings or reputation of a natural person, provided that such discrimination is not committed by or at your direction, or the direction of any partner, member, manager, "executive officer", director, stockholder or trustee of the insured.*

8

297655058v.1

> *As used in this definition, oral, written or electronic publication includes publication of material in your care, custody or control by someone not authorized to access or distribute that material.[1]*

*\* \* \**

*See* Exs. C-D.

22. Subject to their terms, the Business Liability Policies also provide certain claims-made Data Breach Coverage. Because, among other things, no claim was made and reported to Hartford within 30 days thereof or within 30 days of the expiration of the Business Liability Policies, coverage is not even arguably triggered under the Data Breach Coverage. *See* Exs. B-D.

D. <u>UMBRELLA POLICIES</u>

23. Subject to their terms, the Umbrella Policies provide certain umbrella liability coverage, and state, in part:

> **SECTION I - COVERAGES**
>
> **INSURING AGREEMENTS**
>
> **A.   Umbrella Liability Insurance**
>
>> *1.   We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in **Section IV – LIMITS OF INSURANCE.***
>>
>> *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Section II - INVESTIGATION, DEFENSE, SETTLEMENT***.
>>
>> *2.   This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:*

---

[1] The definition of "personal and advertising injury" is amended by Cyberflex Amendment of Coverage B – Personal and Advertising Injury, Form HC 00 88 09 16 and Discrimination- Amendment of Personal and Advertising Injury Definition, Form HC 30 06 09 16. The amended definition is provided herein.

9

        a.      The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period";

*See* Exs. E-F.

24. The Umbrella Policies also contain the following exclusions:

**B.** *Exclusions*

* * *

*4.*    *Personal and Advertising Injury*

*This policy does not apply to "personal and advertising injury".*

***EXCEPTION***

*This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply. Any coverage restored by this EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies.*

* * *

*22.*    *Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability*

*Damages arising out of:*

*a. Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.*

* * *

*This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.*

10

* * *

> **24.    Recording And Distribution Of Material Or Information In Violation Of Law**
>
> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
>
> (2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
>
> (3)    The Fair Credit Reporting Act (FRCA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
>
> (4)    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

* * *

*See* Exs. E-F.

25.    The Umbrella Policies also contain the following Definitions:

***SECTION VII - DEFINITIONS***

***Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.***

* * *

**"Damages"** include prejudgment interest awarded against the "insured" on that part of the judgement we pay.

"Damages" do not include:

1.    Fines;
2.    Penalties; or
3.    Damages for which insurance is prohibited by the law applicable to the construction of this policy.

11

297655058v.1

*See* Exs. E-F.

E.       TENDER AND ACTUAL CONTROVERSY

26.      On or about February 5, 2024, CDS tendered the Underlying Action, seeking defense and indemnity from Hartford.

27.      Hartford denies that it owes CDS any defense or indemnity obligation under the Policies.

28.      An actual justiciable controversy exists between Hartford and CDS as to the availability of insurance coverage to CDS under the Policies. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief that may be necessary.

**COUNT I**
**No Allegations of Publication**
**(All Policies)**

29.      Hartford incorporates and restates the allegations of Paragraphs 1 through 28 above as if fully set forth herein.

30.      The allegations in the Underlying Action seek damages arising from, among other things, CDS' alleged failure to institute, maintain, and adhere to a publicly available retention schedule and from CDS' alleged failure to obtain written consent and a release before obtaining biometric identifiers or information.

31.      These allegations do not allege "[o]ral, written or electronic publication of material that violates a person's right of privacy."

32.      Accordingly, Hartford does not owe any defense or indemnity obligations to CDS with respect to these claims in the Underlying Action.

## COUNT II
## Access Or Disclosure Exclusion
## (All Policies)

33. Hartford incorporates and restates the allegations of Paragraphs 1 through 28 above as if fully set forth herein.

34. The Policies contain an Access or Disclosure Exclusion, which excludes coverage for any "personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

35. The Underlying Action seeks damages arising out of access to or disclosure of a person's confidential and/or personal information.

36. Accordingly, this exclusion bars coverage for the Underlying Action.

## COUNT III
## Recording And Distribution Of Material Or Information In Violation Of Law Exclusion
## (All Policies)

37. Hartford incorporates and restates the allegations of Paragraphs 1 through 28 above as if fully set forth herein.

38. The Policies contain a Recording And Distribution Of Material Or Information In Violation Of Law Exclusion, which excludes coverage for any "personal and advertising injury" arising out of *any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.*

39. The Underlying Action seeks damages arising out of the recording and distribution of material or information in violation of a law.

40. Accordingly, this exclusion bars coverage for the Underlying Action.

13

**COUNT IV**
**Violation of A Person's Right of Privacy Created by Any State or Federal Act Exclusion**
**(Business Liability Policies)**

41. Hartford incorporates and restates the allegations of Paragraphs 1 through 28 above as if fully set forth herein.

42. The Business Liability Policies contain a Violation of A Person's Right of Privacy Created by Any State or Federal Act Exclusion, which excludes coverage for any "personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.

43. BIPA is an Illinois State Act that creates a person's right to privacy.

44. All of the damages sought in the Underlying Action arise from alleged violations of BIPA.

45. Accordingly, this exclusion bars coverage for the Underlying Action.

**COUNT V**
**Knowing Violation Of Rights Of Another Exclusion**
**(Business Liability Policies)**

46. Hartford incorporates and restates the allegations of Paragraphs 1 through 28 above as if fully set forth herein.

47. The Business Liability Policies contain a Knowing Violation Of Rights Of Another Exclusion, which excludes coverage for "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

48. The Underlying Action alleges intentional violations of BIPA.

49. Accordingly, this exclusion bars coverage for the Underlying Action.

## COUNT VI
## Exclusion B.4 Personal and Advertising Injury
## (Umbrella Policies)

50. Hartford incorporates and restates the allegations of Paragraphs 1 through 28 above as if fully set forth herein.

51. The Umbrella Policies contain Exclusion B.4, which, excludes coverage for "personal and advertising injury" unless coverage for "personal and advertising injury" is provided by "underlying insurance".

52. The Business Liability Policies do not provide coverage for "personal and advertising injury" with respect to the claims asserted in the Underlying Action.

53. Accordingly, this exclusion bars Umbrella Coverage for the Underlying Action.

## COUNT VII
## Definition of Damages Does Not Include Fines or Penalties
## (Umbrella Policies)

54. Hartford incorporates and restates the allegations of Paragraphs 1 through 28 above as if fully set forth herein.

55. The definition of "damages" in the Umbrella Policies does not include fines, penalties, or sanctions.

56. To the extent the sums sought in the Underlying Action are fines, penalties, or sanctions, coverage is not afforded.

## COUNT VII
## Personal and Advertising Injury During Policy Period
## (All Policies)

57. Hartford incorporates and restates the allegations of Paragraphs 1 through 28 above as if fully set forth herein.

297655058v.1

58. The Policies only provide coverage for "personal and advertising injury" if the offense takes place during the "policy period".

59. Moreover, Exclusion 2.c. in the Business Liability Policies excludes coverage arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

60. To the extent the Underlying Action alleges "personal and advertising injury", coverage is not afforded during a given Policy to the extent such offense did not occur during that given policy period.

WHEREFORE, Plaintiff HARTFORD CASUALTY INSURANCE COMPANY prays this Court enter the following relief:

A. A declaration finding Hartford owes no duty to defend or indemnify CDS for the claims against it in the Underlying Action under the Policies; and

B. For all such just and equitable relief, including costs of this suit.

    Respectfully Submitted,

    By: /s/ Michael J. Duffy
        Attorney for Hartford Casualty
        Insurance Company

Michael J. Duffy (6196669) – michael.duffy@wilsonelser.com
Michael J. O'Malley (6308059) – michael.o'malley@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street - Suite 3800
Chicago, IL 60603
(312) 704-0550
(312) 704-1522 (fax)

## CERTIFICATE OF SERVICE

       I hereby certify that on June 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:     /s/ *Michael J. Duffy*
        Attorney for Hartford Casualty Insurance Company

297655058v.1